**In re Joe P. LOPEZ, Debtor.**

**Vehicle Removal Corporation, Plaintiff,**

**v.**

**Joe P. Lopez, Defendant.**

**Bankruptcy No. 00–38307 RCM–7.**
**Adversary No. 01–3126.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 2, 2001.

---

Gwendolyn E. Hunt, Joyce W. Lindauer, Dallas, TX, for debtor.

Dennis Olson, Stephen L. Solomon, Olson, Nicoud, Birne & Gueck, Dallas, TX, for creditors.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Bankruptcy Judge.

On July 11, 2001, came on to be heard the above case with Vehicle Removal Corporation ("VRC") as plaintiff, and Joe P. Lopez ("Lopez" or "Debtor") as defendant.

VRC brought this § 523(a)(6) and (a)(17) action against Debtor, arising out of a judgment entered by the state court, a copy of which is attached hereto as Exhibit 1,* and incorporated herein by reference. Neither side offered into evidence the motion underlying such judgment. The Court has core jurisdiction of this case under 28 U.S.C. §§ 1334 and 157(b)(2)(I). The foregoing and following are the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

### Background

VRC is an auto towing company. Lopez, an attorney, is a sole practitioner, who, since 1988, has specialized, to some extent, in suing towing companies for alleged wrongful towing.

Lopez has apparently sued VRC in somewhere between ten and twenty-five cases. Considerable animosity has developed over the years between Lopez, VRC and Mr. Moser, VRC's counsel. Mr. Moser was VRC's only trial witness in this case. He has been on the other side of the VRC cases with Debtor. He also has represented other towing company defendants in Debtor's multiple suits.

The Plaintiff in Exhibit 1 was Rentha Kirby. Ms. Kirby and Debtor presently have an appeal pending over the attached judgment. It was conceded that, for § 523

purposes, it is appropriate for this Court to treat the judgment as a final judgment.[1]

Ms. Kirby, represented by Debtor, sued a company named Eric Towing in a Tarrant County Justice of the Peace Court, and obtained a default judgment. The Kirby Towing bill was $107.06. Section 684.084 of the Texas Transportation Code (Vernon 1999) allows recovery of damages, trebling, attorney fees, etc., if such statute is not preempted by federal law.[2] The total Tarrant County judgment in Ms. Kirby's favor was apparently under $1,500.

As part of Debtor's post-judgment collection activity in Ms. Kirby's Tarrant County suit, the Tarrant County Justice of the Peace Court issued a turnover order against VRC, as alleged successor to Eric Towing.

It was undisputed that Mr. Moser, on behalf of VRC, paid sufficient money into the registry of the Tarrant County Justice of the Peace Court to satisfy Ms. Kirby's judgment. He apparently then advised Debtor of such payment and further advised Debtor that although VRC paid same, VRC was not responsible for such debt. Neither Lopez nor Ms. Kirby has withdrawn such money that was in such court's registry, but, instead, filed the Dallas suit out of which the judgment in question arose. There is no dispute that factually there was only one towing incident involved in the two suits. After the foregoing events occurred in Tarrant County, Ms. Kirby filed the underlying suit in Dallas County against VRC, and obtained a default judgment against VRC in a Dallas County Justice of the Peace Court. Such judgment was then timely appealed to county court, and by reason of *de novo*

---

* Editor's Note: Exhibit 1 not included herein for publication purposes.

**1.** Presumably, if Debtor were to lose in this Court, but was successful on appeal, then he could come back to this Court under Bankruptcy Rule 9024 (F.R.C.P. 60) to try to set aside this Court's judgment.

**2.** It is not necessary for the undersigned to make any decision on the federal preemption issue.

review, the litigation began anew in the Dallas County court in question. The suit was over the same debt already litigated in the Tarrant County court judgment. Lopez did not explain why he did not just draw down the money from the Tarrant County court registry and have Ms. Kirby's claim paid off in such manner.

As noted above, Mr. Moser and Debtor have considerable animosity going between them. Mr. Moser testified that Debtor told him the reason for filing the Dallas suit was to put VRC out of business. Debtor denied that such conversation took place. Mr. Moser filed a complaint against Debtor with the Texas State Bar, which was dismissed. Debtor filed an assault criminal complaint against Mr. Moser, which has not yet gone to trial.

It appears that if some version of Debtor's alleged threat to Mr. Moser ever took place, in all likelihood, it was in the context of an angry confrontation where mutual accusations and warnings were traded or exchanged. There was no showing that such alleged threat was ever considered by the Dallas County court in question. The county court allegedly based its monetary judgment on an attorney fee affidavit from VRC's attorney,[3] and on the fact that the Texas Transportation Code and Dallas City Code sections cited by Debtor were preempted by federal law, specifically 49 U.S.C. § 14501. (Defendant's Exhibit ("DX") 1A.) The state court further found that all Debtor's theories of recovery, except Ms. Kirby's contract claim, were preempted by such federal statute. (DXs 1A–6A.); and that Plaintiff's contract claim was denied for lack of evidence. (DX 3A.) Such court also granted VRC's motion for summary judgment based on collateral estoppel. (DX 3A.) The motion for summary judgment was not produced as an exhibit so the Court can speculate, but not determine, what the collateral estoppel defense was.[4]

There was also testimony that neither the Fifth Circuit, nor any Texas court of appeals, had yet ruled on the federal preemption issue, but that the particular state judge had previously dismissed approximately three of Debtor's prior similar suits on such preemption basis.

Only the following VRC and Debtor's state court pleadings were offered into evidence:

1. Plaintiff's Exhibit ("PX") 1, the judgment attached hereto as Exhibit 1;

2. DX 1A, the order on defendant's plea to the jurisdiction and motion to sever;

3. DX 2A, the order granting defendant's motion to dismiss claims for lack of jurisdiction;

4. DX 3A, the order on defendant's motion for summary judgment;

5. DX 4A, the order denying plaintiff's motion to reconsider defendant's motion to dismiss for lack of jurisdiction.

6. DX 5A, the order on defendant's motion for sanctions, which was revised by PX 1.

Apparently, Debtor's last live pleading before the state court was his second amended petition (as referenced in DX 5A). The Debtor's second amended petition was not offered into evidence before the undersigned.

---

**3.** The alleged VRC attorney fee affidavit filed in state court was never offered into evidence in this Court, nor did Mr. Moser or VRC's bankruptcy counsel ever testify in this Court about VRC's state court attorney fees.

**4.** Presumably, it was based on a determination that the Tarrant County judgment and tender into the registry wiped out any underlying Dallas cause of action against VRC.

## Analysis

### Section 523(a)(17)

■ Plaintiff pled § 523(a)(17), but acknowledged there was scant caselaw construing same. The undersigned agrees with the reasoning of *Hough v. Fry (In re Hough)*, 239 B.R. 412 (9th Cir. BAP 1999), and holds that § 523(a)(17) applies only to fees and costs imposed on prisoner litigants. *See also* 4 *Collier on Bankruptcy* ¶ 523.23 (15th ed. rev.1998).

### Section 523(a)(6)

■ Plaintiff mainly relies on § 523(a)(6) and collateral estoppel. It should be noted that in PX 1, Finding 6, the court struck out the words "for frivolous pleadings pursuant to Tex. Civ. Prac. & Rem.Code § 10.001(2) & (3)." The court also struck paragraph 8, reading: "The Court further found that Plaintiff's claims lack evidentiary support and are not likely to have evidentiary support upon opportunity for further investigation or discovery." In paragraph 7, the court found "that each of Plaintiff's claims or legal contentions are not warranted by existing law and that Plaintiff's counsel failed to make a nonfrivolous argument for the extension of existing law."

■ Willful and malicious conduct is not a prerequisite to sanctions under the Texas Civil Practice and Remedies Code sections discussed more fully hereafter.[5] *See also Bryant v. Rogers (In re Rogers)*, 239 B.R. 318, 321–22 (Bankr.E.D.N.C.1999).

Thus, as discussed below, even if collateral estoppel were to apply to Exhibit 1, such findings as stated therein do not rise to the level of a § 523(a)(6) offense.

---

5. Plaintiff makes no contention that the sanctions were awarded under Rule 13 of the

## Collateral Estoppel

■ Under the doctrine of collateral estoppel, one is precluded from subsequently raising an issue when: (1) the facts sought to be litigated in the second case were "fully and fairly" litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first action. *See Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir.1997), citing *Garner v. Lehrer (In re Garner)*, 56 F.3d 677 (5th Cir.1995); *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997); and *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816 (Tex.1984). It appears that VRC satisfied Element (1), *i.e.*, the facts sought to be litigated in the adversary were within the meaning of existing case law "fully and fairly litigated" in the first suit, and Element (3), *i.e.*, the parties were cast as adversaries in the first action.

### Element Two: Whether the Facts Were Essential to the Prior Judgment

In *In re Schwager*, 121 F.3d at 182–83, the Fifth Circuit discussed Element (2):

Schwager asserts that the bankruptcy court's conclusion is erroneous, *inter alia*, because collateral estoppel does not apply in this circumstance. He argues that the jury findings incorporated into the 1989 judgment cannot support the application of the collateral estoppel doctrine because the jury found both breach of the partnership agreement and breach of fiduciary duty. Schwager maintains *that the conjunctive nature* of the jury's damages finding means "it was impossible to determine what was the basis for the issuance of the debt

Texas Rules of Civil Procedure.

against Schwager." We agree with Schwager.

Texas courts have adopted the Restatement (Second) of Judgments § 27, which is the general rule on issue preclusion. *Gober*, 100 F.3d at 1203 n. 6 (noting that "Texas courts follow Restatement (Second) of Judgments § 27 in determining when to allow issue preclusion" and citing cases). In *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 722 (Tex.1990), the Texas Supreme Court applied comment i to the Restatement, which states:

> i. *Alternative determinations by court of first instance.* If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.

The Texas Supreme Court explained the justification for the rule:

> The rationale for this rule is that a determination in the alternative may not have been as rigorously considered as it would have been if necessary to the result, and the losing party may be dissuaded from appealing one determination because of the likelihood that the other will be upheld.

807 S.W.2d at 722.

The limited partners argue, and the bankruptcy and district courts determined, that because the full amount of the jury's award can be upheld on either basis, collateral estoppel applies to both. This argument is without merit because this case falls directly under the rule of comment i. The limited partners seek to use one issue in the judgment, the breach of fiduciary duty, standing alone. However, the jury was asked in a single question to award damages for *either* breach of fiduciary duty *or* breach of the partnership agreement. Therefore, neither ground was essential to the judgment awarding these damages to the limited partners because the award can be upheld on either basis.

*Id.* (additional emphasis added) (footnotes omitted). In the last sentence of paragraph 7 of the judgment, the court "also" granted the relief because debtor failed to exercise due diligence.

The definition of "also" includes, as definition number 2, "in addition." *Webster's New World Thesaurus, New Revised Edition* (1985).

Texas Civil Practice and Remedies Code, §§ 10.001, 10.002, and 10 .004 state in part:

## CHAPTER 10. SANCTIONS FOR FRIVOLOUS PLEADINGS AND MOTIONS

\* \* \*

### § 10.001. Signing of Pleadings and Motions

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

\* \* \*

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportu-

nity for further investigation or discovery.

\* \* \*

## § 10.002. Motion for Sanctions

\* \* \*

(c) The court may award to a party prevailing on a motion under this section the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, *and if no due diligence is shown* the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation.

\* \* \*

## § 10.004. Violation; Sanction

\* \* \*

(d) The court may not award monetary sanctions against a represented party for a violation of Section 10.001(2).

(Emphasis added.)

"Diligence," "due diligence," and "diligent" are defined as follows:

> **diligence. 1.** A continual effort to accomplish something. **2.** Care; caution; the attention and care required from a person in a given situation. . . .
>
> "Care, or the absence of *negligentia,* is *diligentia.* The use of the word diligence in this sense is obsolete in modern English, though it is still retained as an archaism of legal diction. In ordinary usage, diligence is opposed to idleness, not to carelessness."
> John Salmond, *Jurisprudence* 393

n.(i) (Glanville L. Williams ed., 10th ed.1947).

> **due diligence. 1.** The diligence reasonably expected from, and ordinarily exercised by a person who seeks to satisfy a legal requirement or to discharge an obligation.—Also termed *reasonable diligence.* **2.** *Corporations & securities.* A prospective buyer's or broker's investigation and analysis of a target company, a piece of property, or a newly issued security. ● A failure to exercise due diligence may sometimes result in liability, as when a broker recommends a security without first investigating it adequately.

\* \* \*

> **diligent,** adj. Careful; attentive; persistent in doing something.

*Black's Law Dictionary,* at 468–69 (7th ed.1999).

The face of the judgment purportedly supports a judgment on two theories, *i.e.,* (1) unsupportable legal claims and contentions; and (2) failure to exercise due diligence, either of which would be sufficient to support the result against Debtor, but not Ms. Kirby.[6] Under *In re Schwager,* 121 F.3d 177; and Restatement (Second) of Judgments § 27, relied upon by Texas courts, the judgment is not conclusive with respect to either of such two theories for collateral estoppel purposes, and neither of such findings would support a § 523(a)(6) judgment.

In *Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598, 606 (5th Cir.1998), the court stated:

> Thus, we adopt the alternative definition of "implied malice." Because this

---

**6.** As indicated from Tex. Civ. Prac. & Rem. Code § 10.004(d) quoted above, it would have been improper to award a sanction against Ms. Kirby for violation of § 10.001(2), *i.e.,* unsupportable legal claims or contentions. However, the undersigned reviewed such judgment for collateral estoppel purposes and not whether it was correct.

standard is synonymous to the *Kawaauhau [v. Geiger]* standard for "willful injury," "acts done with the actual intent to cause injury," *id.* at 57, [523 U.S. 57], 118 S.Ct. [974] at 975 [140 L.Ed.2d 90 (1998)] we hold that this is the test for "willful and malicious injury: under § 523(a)(6)". Thus we *hold that an injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm.*

(emphasis added.) The "unsupportable legal contentions" and "failure to exercise due diligence" findings by the state court do not prove that Debtor acted with an objective substantial certainty of harm or a subjective motive to cause harm under § 523(a)(6). As previously held, willful and malicious conduct is not a prerequisite for sanctions under such quoted sections of the Texas Civil Practice & Remedies Code. *See also In re Rogers,* 239 B.R. 318. Since the findings in the Dallas state court are not sufficient to prove a § 523(a)(6) offense by collateral estoppel, does the record made before the undersigned support a § 523(a)(6) finding by the undersigned?[7]

Debtor was reckless in filing the Dallas County suit and exercised poor legal judgment[8] since there was money in the Tarrant County justice court registry posted to satisfy same. However, there was insufficient credible evidence of a § 523(a)(6) offense. Further, there was no proof of any damages suffered by VRC.

■ With sufficient findings and conclusions, a pre-bankruptcy sanction judgment can constitute a § 523(a)(6) offense. *See, for example, Mortgage Capital Advisors,*

*Inc. v. Hawkins (In re Hawkins),* 2001 Bankr.Lexis 221 (Bankr.D. Del 2001); *Erie Ins. Group v. Chaires (In re Chaires)* 249 B.R. 101 (Bankr.D.Md.2000); *John Labatt Ltd. v. Messina (In re Messina),* 2000 WL 311145, 2000 Bankr.Lexis 255 (Bankr.N.D.Ill.2000); *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson),* 224 B.R. 659 (Bankr.N.D.Ill.1998); *Wash v. Moebius (In re Wood),* 167 B.R. 83 (Bankr.W.D.Tex.1994).

Judgment will be entered in accordance with the foregoing opinion.

---

7. Where collateral estoppel is not proven and the sanction judgment is not therefore binding on the Bankruptcy Court, there may be an issue as to the appropriations of a Bankruptcy Court deciding *de novo* what sanctions are appropriate for activity· arising in the initial court. Because of the record in this case, it is unnecessary to decide such issue.

8. Thus, the second suit violated § 10.001(2) and (3) of the Texas Civ. Prac. & Rem.Code quoted above.